ALBERT OHNSORG, ADMINISTRATOR, Respondent, *v.* THOMAS T. TURNER ET AL., Appellants.

### May 1, 1883.

After the death of the maker of certain notes secured by a deed of trust there was a default in the payment of the notes and a sale of the property by the trustees, at which the owner of the notes became the purchaser, and under which he went into possession. The amount of the principal note was not realized at the sale and the payee assigned the same for collection, the assignee to pay the expenses of collection, and to retain one-half the amount collected. The assignee employed the trustees, who were attorneys, to make the collection, they to receive a percentage as compensation. Several years afterwards, the payee of the notes discovered that the foreclosure sale was void, because of a failure to comply with the terms of the deed of trust in the matter of the advertisement of sale, and thereupon, under his direction, the trustees resold the property under the deed of trust. The advertisement complied with the terms of the deed of trust but did not state who was the grantor therein. The maker's estate was insolvent, and his widow and minor child applied for an injunction to restrain the sale, or the removal of the trustees and for an accounting: *Held,* that the bill contained no equity; that the first sale was no cloud upon the title; that the second advertisement was sufficient; that the mortgagee in possession not having refused to account,

there was no ground for the appointment of a receiver; that the trustees were not interested in the trust debt, and properly, upon learning of their mistake, reassumed their duties as trustees.

Appeal from the St. Louis Circuit Court, Horner, J. *Reversed and dismissed.*

Thomas T. Gantt, for the appellants.

Louis Gottschalk, for the respondent.

Lewis, P. J., delivered the opinion of the court.

The petition states that Albert Ohnsorg is administrator, Catherine Rohn the widow, and Augusta the only child, of August Rohn, deceased; that on the 22d of February, 1876, August Rohn was the owner of a lot on Christy Avenue, in block 166 of the city of St. Louis, having forty feet front on the north side of Christy Avenue, and one hundred and forty-five feet deep; that on said 22d of February, 1876, Rohn and wife executed a deed of trust to Arthur and John. F. Lee, recorded in book 538, page 442, to secure to Thomas T. Turner, trustee of Rebekah Briggs, the payment of seven promissory notes of even date, six of them for $450 each, payable in six, twelve, eighteen, twenty-four, thirty, and thirty-six months after date, and one note for $9,000, payable three years after date, all bearing ten per cent interest after maturity; that the three interest notes payable in six, twelve, and eighteen months from date, were promptly paid by said Rohn; that Rohn died in May, 1878; that in March, 1879, A. and J. F. Lee, trustees, advertised the said property for sale for the alleged reason that default had been made in the payment of the other notes, and attempted to sell, and did sell, the said property to said Turner, for the inadequate price of $6,000, and executed to him a trustee's deed therefor; that at said sale only one bid was made for said property, namely, that made by said Turner; that no money passed by said Turner or said Briggs, or anyone else, to said trustees, or either of them, but that said Lees cancelled said notes for $450, due respectively in

twenty-four, thirty, and thirty-six months after date, and placed a credit of about $4,800 on the said $9,000 note; that by the terms of said deed of trust, advertisement for thirty days was required, but that said trustees caused the property to be advertised for only twenty-one days, in clear contravention of the terms of said deed and of their duties as trustees; that at said sale the property was worth at least $18,000, and should have brought at least $15,000 had it been properly advertised; that immediately after said sale and the making to him of a deed, Turner took forcible possession of the property, and has remained in possession ever since, collecting large rents and deriving great profits; that the property is highly improved, having a four-story building containing thirty-eight rooms, the monthly rent of which is worth $125; that after said sale Turner assigned said $9,000 note, on which was a credit of $4,800, to Brainard Million; that Million presented said note for allowance against the estate of Rohn, and procured an allowance, which was affirmed by the circuit court and court of appeals, and an appeal therefrom is pending in the supreme court; that the estate of Rohn is insolvent, and that Million is prosecuting a suit in equity to subject certain real estate held by Albert Ohnsorg to the payment of said judgment and set aside certain deeds made by Rohn in his lifetime; that said A. and John F. Lee are interested in said suits, and the proceeds thereof, should they be realized; that they are acting as attorneys in said suits for said Million and for Turner as trustee, who is also interested; that a short time ago defendants discovered the mistake they had made in not advertising the said property for thirty days; and instead of communicating said discovery to plaintiffs, and having an accounting to ascertain the amount due, they, the said A. and J. F. Lee, advertised the property for sale anew in the *Post-Dispatch*, and in order to conceal this from the plaintiffs, they omitted to mention that it was the property of Rohn, or that it was to be sold under his deed of trust;

that said advertisement was not made at the request of the holder of any of the notes, the payment of which was secured by the deed of trust ; that the three interest notes had been fully paid by the rents and profits ; that the first sale has never been set aside by any court ; that the power of making sale under said deed has been exhausted by said A. and J. F. Lee, in making the first sale ; that they are not impartial, but are acting entirely in the interest of Turner ; that they are not proper parties to remain trustees ; that if the property should be sold under existing facts and without the first sale being set aside, " it would not bring nearly so much as otherwise ;" that the amount due on the notes remains unascertained ; that plaintiffs believe and charge that only a small amount remains due thereon after full credit for all income derived from said property while in possession of defendants ; that if the same be ascertained and fixed, they may be willing to pay off the same without a sale ; wherefore, they pray an injunction to prevent the sale advertised to take place on September 3, 1881, and that the court will cause to be ascertained the indebtedness, if any, remaining due from Rohn on the said notes, and for that purpose take an account of the rents and profits of the property since it came into the hands of defendants ; that it will set aside the first sale, " and in case plaintiffs refuse or neglect to pay off the remaining indebtedness, if any, to order a resale of the property, and for that purpose to remove said A. and John F. Lee, as trustees, as being interested and improper parties, and appoint a proper party therefor, and to cause the proceeds to be distributed according to the rights of the parties."

The defendants, Thomas T. Turner, for himself and as trustee of Rebekah Briggs, John F. Lee, Jr., and Arthur Lee, answered this petition, saying : First, that they admitted the making, on the 22d of February, 1876, of the deed of trust referred to in the petition, but not made an exhibit thereof, by which A. Rohn secured the payment of a note

for $9,000 and notes for interest, payable semi-annually, all the notes bearing ten per cent after maturity ; that A. and John F. Lee made an ineffectual attempt to make sale of the property in 1879, and the writing they then executed was an absolute nullity ; deny that the property was then worth $15,000 ; allege that the taxes and all interest for 1878 were unpaid in 1879 ; that on the 10th of March, 1879, when said sale was attempted, there was due to said Turner $10,920 ; that the property had greatly depreciated since the making of the deed of trust, and was, in March, 1879, worth $5,500, and no more ; that all which was done at that sale, and as a consequence of it, was a nullity, being founded in error of fact, and the estate of Rohn was entitled to no credit by reason of the bid thereat of said Turner ; deny that Turner took forcible possession of the property ; admit that he took possession, but peacefully and in assumed conformity with the sale under the deed of trust ; that, supposing himself to be the purchaser of said property, he paid taxes, made necessary repairs, rented the property and received the rents as of property to him belonging ; deny that at any time since it came to Turner's possession the rents of the property were worth $125 per month ; that they were only $75 per month, out of which all expenses of managing the property, and the taxes were to be paid ; that this he received up to the 2d of July, 1881, when he rented the same for $285, payable every six months, and the taxes ; that this was the best rent obtainable, and that a balance of more that $11,900 is due to Turner on the notes of Rohn, charging Rohn with the notes and interest and crediting him with the net rents of the property ; that on the 1st of August, 1881, he discovered that the sale made in March, 1879, was void, and called on the trustees to readvertise the property for sale in order to raise the said amount ; that the trustees proceeded to advertise, and would have made sale if not prevented by the order of injunction in this cause.

That at no time was there any cause, pretension, or excuse

for plaintiffs to say that they could not ascertain the amount due to said Turner on the said deed and notes ; that plaintiffs never demanded from him any statement of the account between them ; that Turner was not only ready, but anxious, to receive from plaintiffs, or whomsoever, the amount due to him, and thereupon to release Rohn's estate from all liability ; and that plaintiffs never needed to go into equity to ascertain the rents received by Turner ; deny that there was any concealment, or intent to conceal from the plaintiffs the new advertisement ; admit that Turner did not apply to plaintiffs to pay to him the amount due before making the new advertisement, becauset he estate of Rohn was insolvent, and it would have been idle to demand payment of $11,900 from his widow and minor child ; that there was no need of asking a court of equity to set aside the deed made in March, 1879, because Turner was always ready to do this on request, but no such request was made ; that the deed was such an absolute nullity as not to require cancellation ; that these defendants have always been, and still are, ready and willing to receive the money due Turner and release the property ; allege that Million has no right, legal or equitable, to the notes or their proceeds ; that the discharge of the debt secured by the deed of trust will be a complete exoneration of the estate of Rohn, and that defendants have always been ready to receive the money due and make the appropriate release.

Further, that Arthur and John F. Lee, Jr., are in nowise interested in said notes except as the attorneys of Turner. Deny every allegation in the petition not in this answer admitted, and pray a dissolution of the injunction.

A general replication was filed to this answer. Million answered, alleging that he was owner of the note for $9,000, and had instituted the suits mentioned in the petition under a contract with Turner and Lees, and ignored all the other allegations of the petition.

Excepting as to values and amounts, the testimony on

either side tended generally to substantiate the allegations in the petition and answer respectively. There were conflicting opinions as to the rental value of the property in question. Defendant Turner testified, showing the amount of rents received and expenses paid by him on account of the property, after the trust sale in 1879. He stated that the defect in that sale was never discovered until in July, 1881, when the title was examined with a view to effecting a sale of the property. The object of the new advertisement was to rectify the title and sell to a proposing purchaser. He knew of no conversation about putting the advertisement in shape, so that it would not be seen by Mrs. Rohn, or the administrator. There was in evidence an agreement made between defendants Turner and Million, on April 23, 1879, reciting that an unpaid balance remained of $4,400.67 on the $9,000 note, and assigning the note in this condition to Million as a trustee for collection, he to pay all expenses and retain for himself one-half of the amount collected. Also, an agreement between Million and the Messrs. Lee, whereby the Lees were to render professional services as attorneys in aid of the collection, and were to receive therefor one-half of Million's half in compensation. It further appeared that Million afterwards obtained in the probate court an allowance for the balance stated against Rohn's estate, and that this allowance was affirmed on appeal, in the circuit court and court of appeals, and the cause was yet pending in the supreme court.

A temporary injunction had been granted on the filing of the petition. A referee was appointed to ascertain the balance due on the principal and interest notes remaining unpaid, and to take an account of Turner's receipts and necessary expenditures on the property while in his possession ; to compute, upon a basis prescribed, the amount remaining due of principal and interest on the notes at a specified date, and to report the results. The court ren-

dered a final decree declaring that the issues were found for the plaintiff, and that the injunction was therefore made perpetual. It further found the facts, as stated, as to the notes and deed of trust, and that, after all credits given, the sum of $12,193.80 remained due thereon. Wherefore it was ordered and decreed that unless said amount were paid on a day named — which was the second day after the date of the decree — the Messrs. Lee, as trustees, might proceed to sell the property according to the terms of the deed of trust, and apply the proceeds as therein prescribed. It was further adjudged and decreed that the sale previously made under the deed of trust was null and void, and that the trustees' deed was void and of no effect. Both parties appealed.

We are unable to find in the pleadings, or the proofs, or in both together, any proper case for equitable interposition. Why should the newly advertised sale have been stopped by a temporary injunction, in the first instance? If the advertisment, as alleged, was not framed in accordance with the requirements of the deed of trust, the whole proceeding would have been void on its face, the sale would have effected nothing, and the plaintiffs could not have been harmed. But we do not perceive that the advertisement failed of conformity with the terms of the deed. The only terms there expressed in this connection appear in the words, " first giving thirty days' notice of the time, terms, and place of said sale, and of the property to be sold, by advertisement published in some newspaper printed in the said city of St. Louis." Each and every one of these specifications literally appears in the form and method of the advertisement, as shown in the evidence. The notice opens as follows : " Trustees' sale. By virtue and under provisions of a deed of trust, dated the 22d day of February, 1876, and recorded in the office of the recorder of deeds of the city of St. Louis, and state of Missouri, in book 538, page 442, we, the undersigned

trustees, will, on,'' etc. Here follow the time, terms, and place of the sale, with a description of the property, and other matters in customary form. The objection urged upon our attention is, that no mention is made of the parties, grantors, and beneficiary in the deed. If this be a defect, it is not because of any requirement in the deed, which is silent on the subject. It must be because of some unfairness or injury done or threatened to the holders of the equity of redemption. Intending purchasers will care nothing about the names of the grantors. Their interest will be naturally confined to the description of the property and the condition of the title ; as to which points, the notice contains all that is ever inserted in such advertisements. But it is said that the name of the grantor should have appeared, so as to have attracted the attention of the grantor or his representatives. It is not pretended that any language in the deed of trust required this, nor is any law or authority shown which holds it requisite in such cases. Every lawyer knows that advertisements for sales under trust deeds, omitting the names of the grantors, are of frequent occurrence ; and yet, no case can be found in which a sale was enjoined or set aside for that reason. No judicial usage will give heed to a complaint which stands on no better foundation, unless the party complaining can show some actual damage resulting to him. The plaintiffs in this case do not stultify themselves by pretending to any actual damage resulting from the omission of the grantor's name in the notice. They do not pretend that the omission prevented them from making any arrangements with a view to the sale. They do show that they discovered the notice, notwithstanding the omission. They show, moreover, that there has been no sale, and consequently no sacrifice of the property from that or any other cause. Finally, if the maker of the deed of trust had intended that his name should appear in the notice of sale, six additional words would have sufficed to

express it.  He carefully directed what particulars should
appear in the notice, and his failure to stipulate for this is
conclusive against any alleged duty in the premises, arising
out of the contract.  As to the law, the rule is universal,
that when a default occurs, the defaulting debtor is bound
to know the fact and to abide the consequences.  He is not
entitled to notice of what he has himself expressly pro-
vided for.

There is not the slightest foundation in this record for a
suggestion that the omission of the grantor's name from
the notice was for a fraudulent purpose.  The only testi-
mony in that connection was the defendant Turner's denial,
in answer to a question on cross-examination, that any
conversation had occurred to that effect.  The suggestion
of fraud, under such circumstances, reverses the established
maxim, that fraud is never to be presumed, but must always
be proved.  The notice contained everything that was re-
quired by the terms of the deed of trust, or by any known
rule of law.  To assume that the omission of something
else, whose expediency, or the reverse, is at least debatable,
must be treated as *ipso facto* a fraud, is to thrust aside the
best established traditions of both law and equity.

The plaintiffs charge that the Messrs. Lee have become
interested in the trust debt, and are unfit persons to con-
tinue as trustees.  The agreement between Turner and
Million, and that between Million and the Lees, were
founded on a mistake, in which all the parties shared, as
to the vital fact which formed the common purpose of the
contracts.  It was supposed that the trust security was ex-
hausted by the sale, and that other means must be employed
for the collection of a balance remaining unpaid on the notes.
It turned out that the trust security was in fact untouched,
that it had furnished no credit upon the indebtedness, and
that, instead of a balance to be collected by other means,
there remained the entire principal debt, for which the
trust property was bound.  A sale under the trust might

satisfy the whole demand. This state of facts was utterly inconsistent with the obligations assumed by either party, in the agreements referred to. It annulled both of them, by destroying the essential elements of their existence. But, even if there were no such result, it would not follow that the Lees were disqualified for serving as trustees, even against the plaintiffs' objections. While they believed, as all others did, that the trust had ceased with the trust-fund, it was perfectly legitimate for them to undertake, as attorneys, a prosecution by other methods of the creditor's unsatisfied claim. When the mistake was discovered, they promptly resumed the duties devolved upon them as trustees, and advertised the property for sale; thus virtually repudiating the former and void sale, while they necessarily surrendered, in the same act, their contract with Million; rescinding the same on their part, as far as it was possible for them to do so. In all this, they did exactly what the situation called for, and the only things possible to them, consistently with their duties under the trust. How can it be proper to stay them by injunction, or remove them from the trust, for the performance of their manifest and only duty? No court of equity will, in such a case, set aside the selection of the parties in appointing their trustees, and substitute the choice of the chancellor.

Was it proper to enjoin the intended sale, because of the void sale previously made? The record of that sale, in the trustee's deed, was a proclamation of its nullity. It declared upon its face that the sale was made upon only twenty days' notice, when the recorded deed of trust, referred to as the source of the trustee's authority, required an advertising for thirty days. No decree was needed to vacate it, nor could any be rendered, under the settled principles of equity jurisprudence. Story says: " But where the illegality of the agreement, deed, or other instrument appears upon the face of it, so that its nullity can admit of no doubt,

the same reason for the interference of courts of equity, to direct it to be cancelled or delivered up, would not seem to apply; for, in such a case, there can be no danger that the lapse of time may deprive the party of his full means of defence; nor can it, in a just sense, be said that such a paper can throw a cloud over his right or title, or diminish its security; nor is it capable of being used as a means of vexatious litigation, or serious injury. And, accordingly, it is now fully established that, in such cases, courts of equity will not interpose their authority to order a cancellation or delivery up of such instruments." 1 Story's Eq. Jur., sect. 700; *Mawhorter* v. *Armstrong*, 16 Ohio, 188; *Gray* v. *Mathias*, 5 Ves. 286; *Cox* v. *Clift*, 2 Comst. 123. The decree in this case, declaring the first sale void, and annulling the trustees' deed, was wholly unnecessary, and contrary to precedent.

The plaintiffs' prayer for an accounting is without proper foundation, and the circuit court erred in directing an account to be taken. From the earliest history of the proceeding for an account, either at law or in equity, it has been held an indispensable requisite that the complaining party should aver a refusal by the other, upon lawful demand, to render an account of matters within his knowledge, or to come to a just and fair settlement of joint or mutual interests between the parties. In equity, the action is an off-shoot from the jurisdiction to compel a discovery. It implies that the defendant is contumaciously and unfairly concealing or withholding from the plaintiffs' rightful demand, and in defiance thereof, a disclosure, or an accounting, to which the plaintiff is entitled. In the plaintiffs' petition here, there is not a single allegation of any such demand or refusal. The answer avers that the defendants have never been asked for an account, and that they have always been ready to render one, whenever demanded. Should they be forced into expensive litigation, and delay in the foreclosure to which they are entitled, because they

did not thrust their account, unsolicited, into the hands of the plaintiffs? Defendant Turner has received some rents which the plaintiffs are entitled to have credited on the notes. But who can assume that he has failed so to credit them, when the plaintiffs themselves do not allege so much? The legal presumption, in this condition of the pleadings, is of the contrary. Equity presumes fairness, until the contrary is properly averred or proved. Because some figuring may be necessary to ascertain how parties stand, in financial matters, with relation to each other, it does not therefore follow that one may demand, in every case, that the ciphering shall be done by a court of equity. Parties should be left to settle their own affairs without judicial interference, until it is shown, or at least pleaded, that compulsion has become necessary to the ends of justice.

We summarize the several grounds upon which it is claimed that equitable interposition was proper in the present case: 1. Fraud in the method of advertising the intended sale under the deed of trust. We have shown that there was no departure from the terms of the deed, and no injury done, or even shown to be threatened. The pretence that the defendants proposed to derive some advantage from so framing the notice that it would escape the plaintiffs' attention, is negatived by all the possibilities in the case. More than $12,000 remained due to defendant Turner on the trust debt. The plaintiffs were the administrator, the widow and the child of the deceased debtor, out of whose estate nothing could be made for the claim. The trust property was certainly not worth more than the amount of the debt, and, according to most of the testimony, was worth far less. What could the plaintiffs have done to save their equity of redemption? Literally, nothing. How would the defendant Turner have profited by a sale of the property at a reduced price? Whether it brought one dollar, or twelve thousand, the consequence would be the

same to him; since the property itself — or its price, if purchased by a stranger — would be all he could ever realize upon his claim. It would be reversing the rule of evidence to infer fraud from the solitary fact that a motive existed for its perpetration; yet all the reasoning to show fraud, in this instance, begins by assuming that the defendants had a motive for disguising the notice of sale. The form of the notice was adopted, not because it was sufficient under the contract and under the law, but because it would consummate the corrupt design. Thus, the motive explains the notice, and the notice, thus explained, proves the fraudulent motive. This is arguing in a circle, and establishes nothing. 2. The trustees have become interested in the trust debt, and are therefore unfit persons to be continued in the trust. Most minds would find a contrary deduction from the assumed premises. If the trustees are so situated, their interests will prompt them to efforts for securing the highest possible price at the sale. This is identical with the interest of the plaintiffs. Mortgages, with a power of sale in the mortgagee himself, are too well known and approved, for any such objection to have the least weight, even if it were applicable to the facts in this case. We have shown, however, that the particular interest supposed by the plaintiffs does not exist. The Lees, by ignoring the former sale, and assuming to enforce the entire trust, have estopped themselves, as against Million, from asserting any claim under the contract made with him. As it appears impossible to realize anything on the indebtedness, outside of the trust, the trustees can have no reason for not making as much as possible out of the trust sale. This interest, again, if such it may be called, is concurrent with that of the plaintiffs. 3. The trustee's sale already made, and appearing of record, will cast a cloud over the intended sale, and cause a sacrifice of the property. If there were anything in this, how would the injunction and postponement make the matter any better?

Must the defendants be forever prevented from foreclosing the trust, because of that void attempt? Will intending bidders practice more discretion, or have a better knowledge of the recorded nullity, at a postponed sale, than they would have had at the one which the defendants proposed to make? All persons are presumed to know what the records contain. Courts never recognize or act upon a presumption of the contrary. We have sufficiently shown that no court of equity can properly lend its aid for a supererogatory declaration of nullity, when the record itself already proclaims the same. 4. Account: As to this, we have said enough to show that the plaintiffs have presented nothing, either in petition or in proofs, authorizing them to subject the defendants to litigation, and the courts to a laborious waste of time which is the property of the public, in an accounting which has never been denied them, and which they might easily have had without either infliction.

The decree in this case presents some contradictory features that a little consideration might have avoided. It opens with an announcement that the court " finds the issues for the plaintiffs," and that the temporary injunction " be, and the same is, hereby made perpetual." It then details its findings upon the issues specifically, every one of which is found for the defendants; not one for the plaintiffs. Upon the issue of indebtedness, it finds a balance due, somewhat larger than is stated by the defendants, instead of the " only a small amount," as averred by the plaintiffs. The other conclusions of fact are literally as averred or admitted in the defendants' answer, and concerning which no issue was raised. The issue as to the personal fitness of the trustees to continue in the trust, is virtually found for the defendants, in the direction that the same trustees proceed to execute it. The injunction, instead of being perpetuated, is effectually dissolved by the order that, unless the debt be paid within two days, the trustees shall proceed

with the sale, which the injunction thus fails to enjoin. Considering that the plaintiffs have paid no money into court, and have made no offer to pay, this remits the parties to the exact condition in which they were when this useless suit was commenced.    The court makes no order that the names of the parties to the deed be inserted in the advertisement of sale ; thus showing that the plaintiffs' objections on that point, also, are not sustained.    The decree demonstrates, in short, that the defendants were doing exactly what they had a perfect right to do, when they were stopped by the temporary injunction ; and that the creditor has been delayed for now nearly two years, in a foreclosure which has been his absolute and immediate right under the law, in every hour of that period.    The plaintiffs themselves have gained nothing.    They have a decree of nullity as to the former sale, which they already had on the face of the transaction itself.    They have an accounting which does not in the least diminish the trust debt, and which, for aught that appears, was fully at their command without litigation. The sum total of their barren victory appears in the questionable satisfaction of having baffled and delayed a just creditor of their insolvent ancestor's estate, in the assertion of his rights, under that ancestor's contract.    If courts can properly lend their aid to such an achievement, and, at the same time, tax the victim rather than the aggressor, with the costs of the proceedings, our methods of administering justice must be already beneath reproach.    There is no higher judicial duty than that of rebuking and repressing, by the most effectual means, every attempt to drag into litigation the citizen who is in no default, and to postpone, for no end but that of a vexatious delay, the enforcement of his indisputable rights.

We may add a remark about the alleged contracts entered into by the defendants among themselves.    Whatever may be the *status* of these agreements — whether they are abro-

gated or are still in force — is a matter with which the plaintiffs have no concern. The question lies between the defendants alone, and touches no right whatever of the plaintiffs. The plaintiffs, very properly, ask for no decree to affect this contract *status*. Nor do the defendants; and the court makes none. So far, then, the matter has no pertinency to any object of the suit, though, in the petition, it may lend some glitter to an imposing array of utterly irrelevant complications. It would be manifestly absurd for this court to treat those complications in an original decree, since no party to the suit asks for any such thing. That the custom has long prevailed, of making the creditor's collecting attorney a trustee in an instrument whereby the debtor gains time for himself, while he secures his creditor, and that the courts have not yet found occasion to reprehend, or to interfere with the custom, were doubtless sufficient considerations with the circuit court for its proper action in refusing to displace the trustees, because of the contracts mentioned. It may not be amiss to reflect, further, that no legal presumption exists, which makes an attorney, as such, incapable of the honest and impartial discharge of trust obligations in which his client may be interested; or which holds him necessarily disposed to defraud or injure, for the benefit of his client, another party to the trust by which he is bound. The recognized dignity of the profession will, doubtless, long protect it against any judicial rulings of contrary effect.

Finding no ground for equitable relief in the case made by the plaintiffs, we must reverse the judgment, and dismiss the petition, with dissolution of the injunction. Judge BAKEWELL concurs; Judge THOMPSON dissents.